UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WP PROPERTY HOLDINGS I, LLC,

Plaintiff,

v.

Case No. 2:24-CV-778-KCD-NPM

JR&CO., INC.,

Defendant,

_______________________________/

JR&CO., INC.,

Counter-Claimant,

v.

WP PROPERTY HOLDINGS I, LLC; AND WESTPOINT HOMES, LLC,

Counter-Defendants.

_______________________________/

# ORDER

Plaintiff WP Property Holdings I, LLC has sued Defendant JR&CO., Inc. for violating the Florida Building Code and negligence. (Doc. 40.)[1] JR has responded with counterclaims of its own (Doc. 48) and now seeks summary judgment. (Doc. 83.) For the following reasons, JR's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Here are the relevant, undisputed facts. WP owns a warehouse and is a wholly-owned subsidiary of nonparty WestPoint Home, LLC. (Docs. 83 ¶¶ 1-2, 90 ¶¶1-2.) WestPoint hired JR to install a "PVC roof membrane" on WP's warehouse roof. (Docs. 83 ¶¶ 20, 22-23; 90 ¶¶ 20, 22-23.) The contract did not require JR to design or install any new roof drainage.

Midway through the job, the roof essentially failed. (Doc. 83 ¶¶ 34, 90.) Water seeped in through the warehouse ceiling during a rainstorm, and leaks continued even after the storm passed. (*Id.* ¶ 39.)

WP blames JR. It insists the rooftop drains were blocked during the storm and that JR should have installed new drains to alleviate water accumulation. It consequently sues JR for violating the Florida Building Code and negligently performing its nondelegable duties during the membrane replacement. (*See* Doc. 40.) JR now seeks summary judgment on both claims and its counterclaims.

## II. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Smothers v. Childers*, 159 F.4th 922, 930 (11th Cir. 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). A genuine issue exists if a reasonable jury could return a verdict for the nonmoving party. *See, e.g.*, *Martinez v. GEICO Cas. Ins. Co.*, 152 F.4th 1323, 1330 (11th Cir. 2025). "And a fact is material if it might affect the outcome of the suit under the governing law[.]" *Gervin v. Florence*, 139 F.4th 1236, 1245 (11th Cir. 2025).

The moving party "bears the initial burden to demonstrate the basis for its motion, and must identify the portions of the record which it believes demonstrates the absence of a genuine issue of material fact." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018). "The burden then shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). In reviewing the evidence, the court draws all reasonable inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

## III. Discussion

This case needs a trial. While WP's Building-Code count fails, its negligence claim survives and JR's counterclaims lack crucial evidence to enter judgment as a matter of law. The Court addresses each of WP's claims in turn before tackling JR's counterclaims.

**a. WP's Florida Building Code Claim—Count I**

Florida law (Fla. Stat. § 553.84) creates a private cause of action for parties damaged by "material violation[s]" of the Florida Building Code. *See John Hancock-Gannon Joint Venture II v. McNully*, 800 So. 2d 294, 296 (Fla. Dist. Ct. App. 2001). The statute defines "material violation[s]," in part, as "a Florida Building Code violation that exists within a *completed* building, structure, or facility." Fla. Stat. § 553.84 (emphasis added).

No such violation exists here. WP's claim hinges on JR's failure to make the roof of its warehouse fully code-compliant before finishing the roof replacement. The code violation thus did not exist in a "completed building," but rather occurred within an active job site. That alleged violation therefore was not "material" for purposes of § 553.84.

WP sees things differently. It insists the violation—*i.e.*, the failure to provide adequate drainage—falls within the statute's reach since its building was "completed" insofar as it was already standing before JR's work began. But the Court finds that reading too broad. Section 553.84 aims to remedy violations discovered after construction crews have packed up and left for good. *See Anderson v. Taylor Morrison of Fla., Inc.*, 223 So. 3d 1088, 1089 (Fla. Dist. Ct. App. 2017) ("Section 553.84 is a remedial statute because it provides relief for a person whose home has been built in violation of the building code[.]"). Hence the word "completed." If the statute meant to make

contractors liable for code violations existing midway through their work, surely it would've left this modifier out.

And this limitation makes practical sense. Construction and repair work is generally a time-intensive affair. Until a job is done, the work will almost inevitably stand outside the building code. Take a roof replacement. The moment a contractor rips off an old roof, the building is obviously no longer code-compliant—and cannot become compliant again until the new roof is in place. Under WP's reading, every roofer would violate § 553.84 simply by starting the job, remaining perpetually liable until the final nail is driven. That makes no sense. Other legal doctrines—negligence, for one—more aptly govern how contractors manage an active job site. Section 553.84 does a different job: it ensures that the finished product complies with the code. Because JR's work was still in progress, WP's statutory claim fails as a matter of law.

To bring the point home, WP offers no precedent applying § 553.84 to ongoing repair or construction jobs. And every case the Court could find invoking this statute involved finished products. *See, e.g.*, *Osborne v. Drees Homes of Fla., Inc.*, 396 So. 3d 50, 52 (Fla. Dist. Ct. App. 2024); *Anderson*, 223 So. 3d at 1089; *Stallings v. Kennedy Elec., Inc.*, 710 So. 2d 195, 195 (Fla. Dist. Ct. App. 1998); *Edward J. Seibert, A.I.A. Architect & Planner, P.A. v. Bayport Beach & Tennis Club Ass'n, Inc.*, 573 So. 2d 889, 890 (Fla. Dist. Ct.

App. 1990); *Nunez v. Westfield Homes of Fla., Inc.*, 925 So. 2d 1108, 1109 (Fla. Dist. Ct. App. 2006). JR is therefore entitled to summary judgment on Count I.

**b. WP's Negligence Claim—Count II**

WP substantively alleges that JR breached its non-delegable common-law duty to supervise and perform its construction project. (*See* Doc. 40 ¶ 31.) That's a cognizable claim no matter what JR's contractual duties were. *See Mills v. Krauss*, 114 So. 2d 817, 820 (Fla. Dist. Ct. App. 1959); *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV, 2009 WL 2136527, at *2 (S.D. Fla. July 13, 2009). To the extent Count II also includes allegations that JR violated statutory duties—*e.g.*, § 489.1195—such conduct may be used to prove negligence. *See Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1325 (S.D. Fla. 2015) ("The fact that the defendant's behavior may have violated a statute would simply make it easier for the plaintiffs to prove defendant's behavior was negligent."). Precisely how WP plans on proving JR acted negligently is ultimately up for it to decide. And to the extent the complaint also includes non-viable theories, they are properly addressed at trial through evidentiary objections and jury instructions, not by throwing out an otherwise viable claim.

WP has provided sufficient evidence to advance its negligence claim. The record suggests JR was unaware that its subcontractor had blanketed

the warehouse roof with PVC membrane. Several witnesses recall the rooftop's drains being completed covered before and after the storm rolled through. (Docs. 90-11 ¶ 11; 90-15 ¶¶ 8, 10.) Several witnesses also saw rainwater pooling on the warehouse's rooftop and leaking through the ceiling. (Docs. 90-11 ¶¶ 8-9, 12; 90-13 ¶ 10; 90-14 ¶ 6, 8; 90-15 ¶ 9.) What's more, WP's witnesses claim no major leaks had occurred prior to JR entering the picture. (Docs. 90-11 ¶¶ 5, 18; 90-13 ¶¶ 6-7.)

The causal link between JR's conduct and WP's loss can thus be inferred at this stage. *See Certain Underwriters at Lloyd's, London v. CIRSCO, Com. Indus. Roof Servs. Co.*, No. 8:23-CV-2149-KKM-LSG, 2025 WL 712060, at *6 (M.D. Fla. Mar. 5, 2025); *Dix v. Coca-Cola Co.*, No. 6:21-CV-2143-WWB-RMN, 2023 WL 6038111, at *4 (M.D. Fla. Sept. 15, 2023) (noting federal law permits reasonable inference stacking at summary judgment). And while JR claims it has conflicting evidence, it's up for a jury to decide who is more believable. *E.g.*, *Loomer v. Maher*, 831 F. Supp. 3d 1212, 1219 (M.D. Fla. 2026) ("[T]here must exist a conflict in substantial evidence to pose a jury question.").

Finally, JR insists that any further recovery for this claim is barred by its contract with WestPoint. Specifically, JR notes that the contract capped damages at the contract-price and waived claims covered by WestPoint's insurance. But as the Court already held, "only WestPoint and JR[] are

bound" by that deal. (Doc. 47 at 6.) WP isn't privy to the contract. (*See id.*) Nor does WP's negligence claim depend on the contract's terms. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012); *cf. Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1256 (11th Cir. 2011). And, as explained below, it isn't clear that WestPoint acted as WP's agent. On this record, JR cannot hold WP to a bargain it did not make—so the negligence claim lives on.

**c. JR's Counterclaims**

JR also seeks summary judgment on three counterclaims: breach-of-contract, quantum meruit, and unjust enrichment.

Starting with the breach-of-contract claim, JR contends that it performed its part of the bargain and is now owed the remaining balance. But the record tells a far murkier story. Material facts remain in dispute over whether JR breached the agreement first by failing to undertake the roof replacement as required. And until a factfinder resolves that threshold question, there is a genuine dispute about what—if anything—remains due. That alone takes summary judgment off the table.

There is also a question of whether WP can be held liable for the contract it never signed. JR claims that WP and WestPoint *both* breached the parties' contract under an actual-agency theory. "The key element in establishing actual agency is the control by the principal over the actions of

the agent. And it is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship." *Noshirvan v. Couture*, No. 2:23-CV-1218-JES-KCD, 2025 WL 1769669, at *15 (M.D. Fla. June 26, 2025).

JR's evidence is short on this point. While WestPoint had full authority to contract on WP's behalf and never needed WP's approval to do so, the record does not establish that WP retained any right to direct WestPoint's contracting decisions or oversee its actions. So on this record, no actual agency relationship is apparent as a matter of law. *Blue v. Weinert*, 284 So. 3d 1176, 1177 (Fla. Dist. Ct. App. 2019). JR therefore isn't entitled to summary judgment on its breach-of-contract claim. *See Gradia v. Baptist Hosp., Inc.*, 345 So. 3d 385, 388 (Fla. Dist. Ct. App. 2022).

The same goes for JR's equitable theories. Factual questions remain about what value JR actually conferred given the damage caused during the roof replacement. According to WP's evidence, the roof went from having a minor leak to letting water pour through the ceiling. On that record, the fact-finder could readily question what fair value JR delivered, or whether it would be inequitable to withhold the remaining balance. Pair those factual disputes with the rule that quantum meruit and unjust enrichment survive only if an express contract does not govern, and summary judgment is not

appropriate here. *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 430 (Fla. Dist. Ct. App. 2022).

## IV. Conclusion

In sum, JR is entitled to summary judgment only on WP's Building Code claim. WP's has a viable negligence claim, and none of JR's counterclaims are sure shots. Accordingly, JR's Motion for Summary Judgment (Doc. 83) is **GRANTED in part** and **DENIED in part** as set forth above.

**ORDERED** in Fort Myers, Florida on November 19, 2026.



Kyle C. Dudek
United States District Judge